## STEEL & TUBE CO. OF AMERICA v. DINGESS RUM COAL CO.

(Circuit Court of Appeals, Fourth Circuit. January 12, 1926.)

No. 2423.

**I. Mines and minerals ⬤═70(2)—Coal lessee held liable for royalties on coal used by it, rather than sold, on basis of market value.**

Lessee of coal lands agreeing to pay royalty of 10 cents per ton, and in addition 10 per cent. of net price above $1 per ton realized by sale of coal mined, *held* liable for 10 per cent. of market value in excess of $1 per ton of coal mined and not sold but used in lessee's own iron mines and blast furnaces.

**2. Mines and minerals ⬤═70(2)—Coal lessee held not entitled to complain of manner of calculating royalties on coal used by it rather than sold.**

Lessee of coal lands, adjudged liable for royalty on coal used rather than sold, on basis of its market value, "taking into consideration the purpose for which" it used it, was not entitled to complain of quoted words, where it failed to offer proof of market value without limitation or to show harm.

Appeal from the District Court of the United States for the Southern District of West Virginia, at Huntington; George W. McClintic, Judge.

Suit by the Dingess Rum Coal Company against the Steel & Tube Company of America. Decree for the plaintiff, and defendant appeals. Affirmed.

See, also, 3 F.(2d) 805.

J. Gilbert Hardgrove, of Milwaukee, Wis. (Arthur W. Fairchild, of Milwaukee, Wis., Harold A. Ritz, of Charleston, W. Va., Miller, Mack & Fairchild, of Milwaukee, Wis., and Brown, Jackson & Knight, of Charleston, W. Va., on the brief), for appellant.

Douglas W. Brown, of Huntington, W. Va. (Rolla D. Campbell and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., on the brief), for appellee.

Before ROSE and PARKER, Circuit Judges, and WATKINS, District Judge.

ROSE, Circuit Judge. [1] The Dingess Rum Coal Company, the appellee, a West Virginia corporation, was the plaintiff in the District Court, and the appellant, the Steel & Tube Company of America, a Delaware corporation, was the defendant. The parties will be here referred to by the positions they occupied in the court below. The plaintiff there recovered a decree against the defendant for $94,437.82 for royalties and interest thereon. Admittedly the main, and as we think the only, question raised by the appeal, is whether the defendant owes the plaintiff anything.

The relevant facts are that the plaintiff is, and for a number of years has been, the owner of a tract of upwards of 4,000 acres of coal lands in West Virginia. On the 1st of August, 1916, it made a coal mining lease of this property to three individuals to continue until the lessees should have mined and removed all of the minable and merchantable coal upon the property. The lessees were to pay in return a royalty of 10 cents for each and every short ton of coal mined, and in addition 10 per cent. of the net price above $1 per short ton realized by the lessees on the sale of the coal. The lease contained a further provision entitling the lessor to a minimum royalty of a certain number of dollars per acre, gradually increasing until after the fifth year it became $6 per acre per annum. By various mesne assignments, the lessees' interest became vested in the defendant.

In the years 1920 and 1921, the defendant mined and shipped from the property covered by the lease, upwards of 276,000 tons of coal. It paid the sales royalty of 10 per cent. of the net price received above $1 per ton, upon less than 17,000 tons and not upon the remaining 260,000, because, according to its contention, none of the latter was sold by it, but was used in the operation of its iron mines and blast furnaces in Michigan, Wisconsin, and Indiana. The decree appealed from was for the equivalent, with interest, of 10 per cent. of the average fair market value of such 260,000 tons, over and above $1 per ton, f. o. b. the mines of the

defendant; the learned court below holding that if defendant mined and shipped, and for its purposes used coal from the leased premises, it was bound to pay the plaintiff a royalty upon the sum at which the coal could have been sold.

The controversy in the case is as to whether that conclusion was right. We have no question that it was. We do not find it necessary to follow the parties into a meticulous examination of various words and phrases in the lease further than to say that in construing the instrument as a whole, there is nothing whatever in it to indicate that the lessor for one moment thought of making its right to the 10 per cent. royalty depend upon the relationship which might, at any time in the half century or more during which the lease was to run, happen to exist between the possessor of the term of years and the person or corporation who should ultimately use the coal mined on its property and shipped from it. It is stipulated that at the time the lease was made, all coal produced in the field of which the leased property formed a part, was, and had always theretofore been, disposed of by sale. Such being the situation of the parties at the time the contract was entered into, no court would be justified in holding that the lessee, by the simple process of using the coal, could destroy the right of the lessor to its 10 per cent. royalty. If the contention of the defendant was sound, the rights of the plaintiff might easily depend upon the form which its lessee might choose to give to transactions which in their substance would differ little if at all. For example, it might suit a lessee to ship the coal to a subsidiary corporation, all of whose stock it owned. For cost accounting or other bookkeeping purposes, the transaction might take the form of a sale of the coal by the lessee to its subsidiary. In that event, the lessor would be entitled to its 10 per cent royalty. The next year, it might please the lessee to extinguish the existence of the dependent corporation and to operate the latter's plants directly, and in that case the lessor would, upon the theory of the defendant, have no claim to royalty. It is too great a strain upon credulity to suppose that any lessor intended that its rights should be dependent upon circumstances over which it could exercise no control and in which it was not in the slightest degree interested. Nothing but the plainest and most unambiguous language could support such a conclusion. It was contemplated by the lessor that the lessee in the future might choose upon the premises, to turn some, or all, of the coal mined into coke and the lease apparently sought to direct what should happen in such contingency. Both parties are agreed that what is said on this subject is meaningless, either because the wrong words were used or more probably because something was inadvertently omitted. No inference contrary to what has already been said can be based on the language actually employed.

[2] The parties stipulated the number of tons used by the defendant and what was its market value, "taking into consideration the purpose for which the defendant made use of" it. The words in quotation marks formed part of the decree of the learned court below, describing the principles upon which the accounting before the master should be had. Defendant now complains of them, but it did not offer to prove what the market value without limitation was, and there is nothing in the record to suggest the restriction to which it now objects did it any harm.

It follows that the decree below was right, and must be affirmed.